# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| J. TODD WALTERS, | : |
|     Plaintiff, | : |
| | : |
| v. | : |
| | :    3:10-cv-647 (WWE) |
| GENERATION FINANCIAL MORTGAGE, LLC | : |
| and AMSTON MORTGAGE COMPANY, INC., | : |
|     Defendants. | : |

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS

In this action, plaintiff J. Todd Walters asserts claims of breach of contract, breach of the covenant of good faith and fair dealing, fraud, violation of Connecticut General Statutes § 31-51q, wrongful discharge in violation of public policy, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), and breach of fiduciary duty against Generation Financial Mortgage, LLC ("Generation") and Amston Mortgage Company, Inc. ("Amston").

Defendants have filed a motion to dismiss the claims of breach of the covenant of good faith and fair dealing, fraud, wrongful discharge in violation of public policy, and CUTPA. Plaintiff does not oppose dismissal of the count for wrongful discharge in violation of public policy. Upon review, the motion to dismiss will be granted in part and denied in part.

## BACKGROUND

For purposes of ruling on a motion to dismiss, the court accepts all allegations of the complaint as true.

At the time relevant to this action, defendant Generation was a Delaware limited

1

liability company engaged in the business of selling residential reverse mortgage products and services to persons 62 years of age and older within the State of Connecticut. Defendant Amston was a Connecticut corporation also engaged in the same business as Generation.

Prior to May 2007, plaintiff J. Todd Walters was the president and sole shareholder of Amston. On May 14, 2007, Generation purchased all of the outstanding capital stock of Amston from Walters.

As part of the consideration for the purchase of the Amston stock, Walters accepted employment for a five year term as President of the division within Generation comprising Amston. Plaintiff's employment during this five year term was subject to a written employment agreement, which provided that he would receive a salary of $200,000 per year with benefits and performance bonuses and a 3.5% interest in defendant Generation. The employment agreement also provided that Generation could only terminate plaintiff for "cause" or incapacity, and it could force plaintiff to sell his interest in Generation.

On November 6, 2009, defendants verbally informed plaintiff that his employment was terminated. No grounds for the termination were disclosed. However, plaintiff was provided with a document entitled "Confidential Separation and Release Agreement," which provided that plaintiff would be paid $175,000 if he released defendants from any financial liability owed to plaintiff pursuant to his employment agreement. Plaintiff refused to sign the separation agreement and continued to perform pursuant to his employment agreement.

On November 29, 2009, defendants served notice on plaintiff that he had failed to

"substantially perform" his reasonably assigned material duties to the company "as evidenced by a 36% drop in average monthly loan volume when compared to the previous year."

On May 10, 2010, defendants offered $350 for the fair market value of plaintiff's 3.5% interest in Generation. The price offered in plaintiff's interest was grossly undervalued. On December 17, 2009, defendants ceased paying plaintiff any further compensation or benefits, thereby terminating his employment.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937 (2009).

### Breach of the Covenant of Good Faith and Fair Dealing

In count one, plaintiff asserts that defendant breached the terms of the agreements for purchase of Amston and for his employment. In counts two and three, plaintiff alleges breach of the covenant of good faith and fair dealing relevant to plaintiff's

3

employment agreement and the Amston purchase agreement.

The duty of good faith is implied in every contract or contractual relationship. <u>De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.</u>, 269 Conn. 424, 432-33 (2004). Thus, on a claim for breach of the covenant of good faith and fair dealing, the plaintiff must demonstrate that the defendant engaged in bad faith that impeded the plaintiff's right to receive the contract benefits. <u>Rafalko v. Univ. of New Haven</u>, 129 Conn. App. 44, 51 (2011). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." <u>De la Concha of Hartford, Inc.</u>, 269 Conn. at 433.

Here, defendants assert that plaintiff has not properly alleged claims of breach of the covenant of good faith and fair dealing. Defendants argue that plaintiff could not have any expectation of receiving benefits from the agreement to purchase Amston because that contract had been fully executed. However, plaintiff alleges that he expected as part of the consideration for the purchase of Amston that he would receive the benefit of a 3.5% interest in defendants and that defendants breached the purchase agreement when it wrongfully called his interest. The Court finds that these allegations adequately plead that plaintiff had the expectation of receiving a benefit from the purchase agreement.

Defendants argue further that plaintiff has alleged acts that constitute legitimate business decisions that cannot be considered to have been taken in bad faith. Plaintiff's claims of breach of the covenant of good faith are premised on the assertion

4

that Generation intended to destroy the business of its Amston division and it justified its termination of plaintiff's employment on the resulting poor business performance. Plaintiff has alleged that such bad faith included reducing advertising and marketing, appropriating leads generated by Amston's website, failing to obtain licensure in states in which Amston did substantial business, reducing the product line, opening a call center that competed with Amston's salespeople, and closing Amston branch offices. The Court cannot determine the motivation for these acts, and it must construe the inferences of fact in the light most favorable to plaintiff. Accordingly, these allegations could constitute a course of bad faith conduct, and the Court will leave plaintiff to his proof. The motion to dismiss will be denied.

Fraud

Defendants argue that plaintiff's fraud count must be dismissed because it is not pleaded with particularity.

In order to satisfy the pleading standard for allegations of fraud pursuant to Federal Rule of Civil Procedure 9(b), a complaint must: (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. Antian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999). Plaintiffs may make general allegations of malice, intent, knowledge or other state of mind, but the facts must give rise to a strong inference of fraudulent intent. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). The purpose of the specificity requirement is: (1) to ensure that a complaint provides defendant with fair notice of the plaintiff's claim; (2) to safeguard defendant's reputation from improvident charges; and (3) to protect

5

defendant from a strike suit. O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991).

Defendants assert that plaintiff's claim states only general allegations that "Generation defrauded" plaintiff, that plaintiff relied on Generation's statements, and that plaintiff suffered damages. Plaintiff represents that defendant made false statements concerning his contract for employment, his benefit of an interest percentage in defendants and his value as an employee to defendants. Plaintiff asserts that these statements were made by representatives of Generation, were made with intent to induce plaintiff to sell his company, and were known to be false. However, plaintiff has failed to provide specific facts as to the alleged fraud, such as the identities of the individuals who made the statements or when and where such statements were made. This information, which should be within the knowledge of the plaintiff, should be included within the allegations of fraud. The motion to dismiss the fraud claims will be granted, but plaintiff will be afforded leave to replead the claim.

CUTPA

Defendants argue that plaintiff's CUTPA claim cannot be sustained because it is based on the employment relationship. Plaintiff agrees that an employment relationship is not within the scope of CUTPA protection, and he has agreed to remove allegations concerning his employment. See Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 670 (1992).

CUTPA provides, in relevant part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). The Connecticut Supreme Court

defendant from a strike suit. O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991).

Defendants assert that plaintiff's claim states only general allegations that "Generation defrauded" plaintiff, that plaintiff relied on Generation's statements, and that plaintiff suffered damages. Plaintiff represents that defendant made false statements concerning his contract for employment, his benefit of an interest percentage in defendants and his value as an employee to defendants. Plaintiff asserts that these statements were made by representatives of Generation, were made with intent to induce plaintiff to sell his company, and were known to be false. However, plaintiff has failed to provide specific facts as to the alleged fraud, such as the identities of the individuals who made the statements or when and where such statements were made. This information, which should be within the knowledge of the plaintiff, should be included within the allegations of fraud. The motion to dismiss the fraud claims will be granted, but plaintiff will be afforded leave to replead the claim.

CUTPA

Defendants argue that plaintiff's CUTPA claim cannot be sustained because it is based on the employment relationship. Plaintiff agrees that an employment relationship is not within the scope of CUTPA protection, and he has agreed to remove allegations concerning his employment. See Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 670 (1992).

CUTPA provides, in relevant part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). The Connecticut Supreme Court

has adopted the following factors known as the "cigarette rule" to determine whether a trade practice is unfair or deceptive: "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statute, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen." A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215 (1990). In order to prove that the practice is unfair, it is sufficient to meet only one of the criteria or to demonstrate that the practice meets all three criteria to a lesser degree. Hartford Electric Supply Co. v. Allen-Bradley Co., 250 Conn. 334, 368 (1999). A CUTPA violation cannot be alleged "for activities that are incidental to an entity's primary trade or commerce." Sovereign Bank v. Licata, 116 Conn. App. 483, 493–94 (2009).

Plaintiff counters that the CUTPA claim is based on the alleged deceptive acts asserted to have induced plaintiff to sell Amston rather than the subsequent conduct during his employment relationship with defendants. In support of his claim, plaintiff asserts that a single transaction such as the sale of a business may constitute a CUTPA violation provided that it occurs within a business context. See Telesis Merges & Acquisitions, Inc. v. Health Resources, Inc., 2001 WL 273176 (Conn. Super. 2001). Although some Connecticut courts have held that CUTPA does not apply to an isolated transaction for a sale of business, see Advest, Inc. v. Carvel Corp., 1999 WL 786357 (Conn. Super. 1999) (citing cases dismissing CUTPA claim based on sale of business), the Court finds sufficient authority supporting a CUTPA claim stemming from a sale of a

7

business as alleged in the complaint. See Halo Tech Holdings, Inc. v. Cooper, 2008 WL 877156 (D. Conn. 2008) (finding that CUTPA applies to sale of business and citing cases). Accordingly, the Court will not dismiss the CUTPA claim to the extent that it is based on the sale of the business. Plaintiff is instructed to replead the count to remove the allegations that concern his employment.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED in part and DENIED in part. Plaintiff is instructed to replead the claims of fraud and CUTPA.

Plaintiff should file an amended complaint consistent with this ruling within ten days of this ruling's filing date.

Dated this _27th__ day of June, 2011 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge