UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| J. TODD WALTERS,                                : | |
|       Plaintiff,                              : | |
|                                         : | |
| v.                                             : | 3:10 cv 647 WWE |
|                                         : | |
| GENERATION FINANCIAL MORTGAGE,  : | |
| LLC, and AMSTON MORTGAGE CO.,    : | |
| INC.,                                             : | |
|       Defendants.                          : | |

**MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS**

In this action, plaintiff J. Todd Walters asserts claims of breach of contract, breach of the covenant of good faith and fair dealing, fraud, violation of Connecticut General Statutes § 31-51q, wrongful discharge in violation of public policy, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), and breach of fiduciary duty against Generation Financial Mortgage LLC ("Generation") and Amston Mortgage Company Inc. ("Amston").

Defendants have moved to dismiss count four, fraud, for failure to plead the claim with the required particularity. For the following reasons, defendants' motion to dismiss will be denied.

**BACKGROUND**

For purposes of ruling on a motion to dismiss, the Court accepts all allegations of the complaint as true and draws all inferences in favor of plaintiff.

Plaintiff was the sole owner of Amston, a regional reverse mortgage company. In 2007, plaintiff entered into an agreement to sell Amston to Generation, a competitor. As part of the consideration for the sale, defendants entered into an employment agreement in which they

agreed to employ plaintiff as Executive of the Amston division for a five-year term. Defendants also agreed to grant plaintiff a 3.5% interest in defendants.

Plaintiff alleges that defendants never intended to fulfill their contractual commitments and that defendants made the promises to induce plaintiff to sell his company, thereby eliminating a competitor. In addition, plaintiff accuses defendants of falsely representing that they were on the market, and that plaintiff would earn substantial amounts from his interest once defendants were sold.

Defendants argue that plaintiff was not promised "unconditional" employment. However, both plaintiff and defendants agree that plaintiff's employment was governed by the five-year employment contract. The contract provided that plaintiff's employment could only be terminated "for cause" or upon plaintiff's death or incapacity.

Defendants assert that plaintiff was terminated for cause pursuant to section 4(g)(i)(4) of the employment agreement. 4(g)(i)(4) provides:

> "Cause" shall include any of the following grounds for the Company's termination of the Executive's employment: . . . (4) The Executive continually fails to substantially perform his reasonably assigned material duties to the Company . . . as reasonably determined by the President of [ ] Generation, which failure (A) has continued for a period of at least ten (10) days after written notice of demand for substantial performance has been delivered to the Executive specifying the manner in which the Executive has failed to substantially perform, and/or (B) the Executive unreasonably allows the situation to recur following the giving of such notice;

On November 6, 2009, defendants attempted to terminate plaintiff's employment without giving a reason. Instead of following the procedure laid out in the agreement, defendants informed plaintiff of his poor performance two weeks *after* they informed him of his termination.

No notice specifying the manner in which plaintiff failed to "substantially perform his reasonably assigned material duties" was ever given. Rather, defendants sent plaintiff a letter stating that his employment was being terminated "for cause" due to drop in revenue generated by the Amston division.

Following the termination, defendants claimed the right to redeem plaintiff's membership units. Defendants tendered payment of $350 for plaintiff's 3.5% interest - an interest defendants represented as potentially worth between $3,500,000 and $11,000,000 during sales negotiations three years earlier.

Plaintiff alleges that the decrease in the Amston division's revenue resulted from defendants' actions and was used as pretext to fire him. Furthermore, plaintiff claims that defendants lied about the value of plaintiff's 3.5% interest.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

**Fraud**

Defendants have moved to dismiss count four, fraud, for failure to plead the claim with the required particularity. The elements of a fraud case in Connecticut are: "(1) a false representation was made as a state of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." Axelrod v. Flannery, 476 F. Supp. 2d 188, 193-94 (D. Conn. 2007).

A "complaint alleging fraud must contain a greater level of factual specificity than that required under the requirements of Rule 8(a)(2) and *Twombly*." Allstate Ins. Co. v. Advanced Health Professionals, P.C., 256 F.R.D. 49, 51 (D. Conn. 2008). The facts pleaded by a plaintiff must give rise to a strong inference of fraudulent intent. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). "In addition, the complaint should explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." Infra-Metals, Co. v. Topper & Griggs Group, Inc., F. Supp. 2d, 2005 WL 3211385 *4 (D.Conn. 2005) (internal quotation omitted). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields, 25 F.3d at 1128.

Plaintiff alleges that defendants' motive for committing fraud was economic. By eliminating or absorbing the competition at less than the agreed upon price, defendants would gain market advantage at a discount. The opportunity to commit fraud existed when plaintiff was

4

willing to sell his company in exchange for illusory promises of continued employment and a 3.5% ownership interest.

Plaintiff has cited multiple pre-sale meetings with executives at Generation where he was led to believe that his 3.5% interest would realize him $3,500,000 to $11,000,000 if Generation was acquired by another company.  While defendants' representation that they were on the market was not a promise of eventual sale, the value of plaintiff's compensation was certainly important to his decision to sell his company.  Likewise, although an LLC member's projected realization at sale is not the same as the value of the member's interest upon expulsion, elimination of plaintiff's interest through payment of one ten-thousandth of the purported floor value constitutes strong circumstantial evidence of conscious misbehavior.  Defendants have offered no explanation for the extreme disparity in valuation of membership units.

Defendants' failure to abide by the procedural requirements of the employment contract is also circumstantial evidence of conscious misbehavior.  The decreased revenue explanation for plaintiff's termination was only offered after plaintiff protested that defendants were attempting to terminate him without sufficient cause.  Furthermore, plaintiff claims that shortly after Generation's purchase of plaintiff's reverse mortgage business, defendants commenced a systematic campaign to impair plaintiff's ability to enhance the Company's business through Amston, as contemplated by the parties in their agreement.  Such conduct included: (1) materially reducing its retail marketing and advertising budget from the levels expended by Amston prior to its purchase by Generation; (2) eliminating its retail business' website and instead steering potential retail customers to Generation's centralized national call center; and (3) failing to become licensed to do business in New York, thereby entirely eliminating a substantial

portion of Amston's retail business' product line, greatly reducing Amston's ability to compete in the retail mortgage lending industry.  Despite plaintiff's requests that the foregoing conduct be abated, defendants continued to dismantle Amston's business through closure of eight of its branch offices and elimination of key employees.  Plaintiff alleges that defendants engaged in these activities with the purpose of terminating plaintiff's employment, thereby avoiding paying him under the employment agreement and providing an excuse to call plaintiff's ownership interest for an inadequate price.  In other words, the 36% decrease in Amston's average monthly loan volume was not the result of plaintiff's failure to "substantially perform his reasonably assigned material duties."

Defendants made representations that plaintiff's employment would only be terminated for cause and that plaintiff's ownership interest could be worth $3,500,000 to $11,000,000.  Defendants' statements to plaintiff about his employment contract and the value of his ownership interest in the company were made with the intent of inducing reliance thereon - so plaintiff would sell Amston to defendant Generation.  Plaintiff relied on these statements.  Drawing all inferences in favor of plaintiff, defendants' failure to comply with the employment agreement and $350 payment for plaintiff's ownership interest make feasible plaintiff's claim that defendants' false statements were known to be untrue by defendants.  Therefore, defendants' motion to dismiss will be denied.

## **CONCLUSION**

For the above stated reasons, defendants' motion to dismiss is DENIED.

Dated this 5th day of April, 2012 at Bridgeport, Connecticut.

```
               /s/
        WARREN W. EGINTON
        SENIOR UNITED STATES DISTRICT JUDGE
```